My name is Patrick Flanagan. I represent Edward and Dwayne Baker and along with my co-counsel Pete Gibson. We'll be sharing the argument today. I will take only seven minutes. I'll try and use just five initially and reserve two for rebuttal with the court's permission. I'd like to acknowledge the presence of some fine young lawyers that are about to, I assume, work with the court. And I'd like to put their service to the court in perspective. In 1987, Mr. Gibson and I were appointed by the court to represent Richard Rupley. I was appointed to represent Edward Lee Baker. Upon appeal, upon habeas, Judge Reed, Chief Judge Reed, appointed me to represent Dwayne Baker as well. It was, as Jerry Garcia would say, a long, strange trip. The convictions, some were confirmed, some were affirmed. The Bakers went back for Rule 35. We were successful in part. Habeas was commenced in 1995 with a hearing in front of Judge Reed, who was the trial court at that time. It was not just an ordinary habeas proceeding, as you can well imagine, Your Honors. This trial took 16 months. What was extraordinary was not just the length of the trial, the breadth of the trial. There were 15 defendants that went to trial. Twenty-five were indicted. Mr. Gibson and I represented the lead defendants. But what was remarkable about this trial is what happened afterwards. Because, Your Honor, I'm not here just representing the Bakers or the unsuccessful petitioners in a habeas. I have to say that the real victim in this case is the judge who tried this case. For those trial lawyers and those trial judges, there's a special moment that occurs when the judge walks into the courtroom and the crier brings the court to its feet. And from the hardened criminal that has sat next to me at counsel table to the humble citizen that sits for jury duty, there's that special moment where the court takes the bench and calls it into session. Judge Reed spent long, hard hours investing his good offices to ensure that there would be a fair trial in this case. And to that end, he worked diligently to make sure that there would be a fair jury. What did we find at the conclusion of this finding? Is your habeas petition timely, counsel? Yes, it is, Your Honor. It looks to me like it's barred by the statute of limitations. Would you like to explain why it is not barred by the statute of limitations? Certainly, Your Honor. There are several arguments that can be made towards the tolling. Excuse me, Your Honor. I didn't hear it, but you were starting on something. Oh, I'm sorry, Your Honor. Can the court hear me now? There are several arguments that can be proffered to address the issue of the statute of limitations in this case. First of all, with respect to the statute, I assume the court is addressing the ADEPA claim, the anti-effective death penalty. Precisely. The ADEPA became effective on, let's say, April 24th, 1996. You had one year to file your habeas corpus petition. Your Honor. That was the law. That is the law. There was a Ninth Circuit detour somewhere in the middle there, but that was wrong. Under the law at the time, the petitions were considered by Chief Judge Edward C. Reed. The law in the Ninth Circuit permitted the court to consider the application for... I don't care when he considered them. His consideration is not my question. My question is, were you barred by the statute of limitations? Not whether he made a mistake or somebody else did. ADEPA, you had until April 24th, 1997 to file your petition. You didn't. In September of 1997, this court correctly ruled that your filings, short of filing the petition, were not effective to be the commencement of a habeas case. In other words, you were under ADEPA. So we said in September of 1997. Still and all, if I have my facts right, you didn't go ahead even after September of 1997, when that was the law of the circuit, you still didn't file your habeas. You waited another, what was it, 18 months or something like that? We were ordered, Your Honor, by the court to wait that time. All right. Did you have a court order that said you cannot file a habeas petition? Your Honor, we were under the court order that we were to file the petition at a date certain, which was after that date, as this court has noted. That's the first ground upon which the statute of limitations should be told. How far does that get you? I beg your pardon, Your Honor? How far does that get you? Your Honor, I don't think it takes us any farther than the filing in November of 98, I believe, is when we filed. When did the district court resolve the issues relating to conflict? The court held an evidentiary hearing, Your Honor, and I believe it was in May of 1997. I believe, and counsel will correct me if I'm wrong. The hearing, I believe, was in April of 1996 that appointed counsel and considered, and if you look at the district court's order in that case, considered the issues relating to the filing, which I believe goes to the court's question as to whether or not a filing was considered to be at that time. The court found, in looking at the order, sufficient grounds, even though it states in the order itself a petition had not been filed. Now, ADEPA does provide for the filing of a petition within one year, and that expresses congressional intent that there not be any delay in these cases. I will note that there is no corresponding requirement that the petition be considered in a certain amount of time, but we filed within 60 days of the court's requirement. Well, wait a minute. After the district court completed its ruling or rendered its ruling on the conflict issue. Correct, Your Honor. And everything was, the judge was satisfied that there was no conflict. Correct. What prevented you from filing your habeas petition at that time? Your Honor. It was almost a year and a half later. No question about it. No question about it. From that point on, what prevented you? The court anticipated that there would be discovery before the filing of the petition. And actually. But did you ask for discovery or did court say, wait a minute, don't file that petition, hold down, don't file the petition, let's do all this discovery first, and then file your, or did you say, judge, we really can't file our petition, because we don't know enough about what happened, and we can't frame our constitutional claims properly until we know a little bit more about the facts. Let's expand that universe, Your Honor. It's we. It wasn't just us that decided, us being the petitioners, that decided that we wanted discovery. The government and the defense and the court determined that the more efficient way to approach, given the massive record here, was to discover, was to conduct discovery. The Congress decided the most efficient way to approach it is you file within a year. And you didn't. Your Honor, we worked with the government in this case. In spite of the Ninth Circuit law that said at the time, you must. Your Honor, at the time we were working to establish the briefing schedule, which discovered the illicit affair between the bailiff and the juror. Never mind the briefing schedule. I'm telling you, and as you know, that in September of 1997, it became the law of this circuit that you had to file within a year. And you didn't. Your Honor, that's absolutely correct on the record. You're absolutely correct on the record. During that time period, neither the government nor the court nor the defense in this case had any illusions as to what they were proceeding with, which was the determination of grounds with which to file the 2255. Your Honor, if I may. I'm sorry to keep taking your time, but you all are down to nine minutes and 12 seconds. Thank you, Your Honor. If I may, just reserve the rest. Thank you very much, Your Honor. Thank you, Judge. Is your court counsel going to argue now? I'll take the remaining nine minutes, Your Honor, and reply. Okay, you want to save it for reply, for rebuttal. Okay, that's fine. Then we'll hear from the government. Good morning. If it pleases the Court, my name is Gregory Dam. I'm an assistant United States attorney in Las Vegas, Nevada, and I've been designated as the representative of the United States in this particular matter. I'd like to commend the candor of both counsel, Mr. Flanagan and Mr. Gibson, for citing in their reply brief the Woodford v. Garceau case, which seems to me to be dispositive of this particular habeas corpus petition as it respects Mr. Roopley and the two Bakers. Well, that just means that we have to apply the AEDPA statute here. It means the one-year statute of limitations applies. Right. And they vastly exceeded the one-year. The question, though, is they still have the availability of equitable tolling. That's correct. But equitable tolling requires that there be extraordinary circumstances beyond the Petitioner's control that prevent the Petitioner from. Well, if the judge says don't file that petition until we resolve these issues regarding conflict, why wouldn't that be? I mean, a reasonable lawyer. I mean, if I were on the other end of an order like that, I don't think I would file a petition. Maybe I wouldn't. Maybe I'd go say, hey, judge, look, I've got to file this to protect the statute of limitations. There's no order that I'm aware of in the record that prevented either these Petitioners or their counsel from filing a 2255 petition. I believe it was the United States that brought up the issue of potential conflict in the context of the 2255 proceedings, because what the court was proposing to do and what the court did do, in fact, is to appoint counsel that had represented these Petitioners at trial. Mr. Rupley had counsel appointed for him on this matter back in 1995. Yes. So the conflict issue wasn't resolved or didn't come up until much later and apparently was resolved sometime around May of 1997. There's no indication of why Mr. Rupley couldn't have filed his petition between 1995 and 1997. He had he was appointed counsel in March, on March 15th of 1995. He had over two years in which to file his petition. He could have filed his petition and then they could have resolved the conflict issues. Well, in 95 he didn't have to. There was no statute in 95. The one-year period didn't exist then. No, I understand that. But in response to the question about equitable tolling, I mean, there was nothing that prevented the defendants from filing petitions prior to the expiration of the one-year statute of limitations that became effective after that. Well, let me ask you this. Between April of 96, April 24th, the effective date of the Anti-AEDPA. I know it by its acronym. It became effective. And the expiration of the one-year period, was there anything during that one-year period, did anything take place by the court, any suggestion by the court, any directive by the court short of a court order that would have reasonably led these lawyers to believe that they should not file their habeas petition? Not to my knowledge. There's no order that I'm aware of that prevented these attorneys from filing their petition. What happened, in fact, is that counsel was appointed for the petitioners. Then they requested this discovery mechanism prior to filing any 2255 petitions. Didn't you have the conflict issue first? I think the discovery issue came up first, although I'll have to admit. It's confusing. My sense was that sometime in 96, the court said the first order of business is to deal with the conflict issue, which I take it had been brought up by the government. And I can understand why you'd bring it up. And so I try to ask myself, well, what would a lawyer do in that situation? If the question's been raised whether I can represent these two, dare I file a paper for the two of them when the judge has said the first order of business is to deal with that? Well, it seems to me what counsel should have done is, realizing that the deadline was coming up, is they should have addressed that squarely with the court and said, listen, the AEDPA was passed in 1996. These petitioners are under a deadline to file their petition timely. That didn't happen. I'm not sure what their ---- I believe you said the conflict issue was resolved, you said, when, in May of 97? Yes, that's my understanding. Well, they didn't file within a year after that either, did they? No, they didn't file until ---- Well, that's a good question. If there's equitable tolling, I assume that they're going to have to argue that equitable tolling means then they can file their petitions any time they want to. Well, I think usually we say equitable tolling gives you the time of the tolling. So that gives them to May of 97. That's when it was resolved. Yes, and if you use that rationale, they're still out of time, because they didn't file their petitions until the end of 1998, November of 98. So is there anything that happened between, is there any directives, any suggestions by the district court judge that at that point, during that supplemental one-year period, plus that they not file their habeas petitions, or their 2255s? Let me, if I'm right. Did you, did the government ever say, Your Honor, we think it would be more efficient for them to hold off filing their petitions until we do some discovery here and we sort of understand what the facts are and what the claims are going to be before we get this petition on file? Did the government ever take that position? What the court. That's not my question. My question is what did the government do? I'm not sure that the government, I'm not sure. That's my answer. I've worked diligently to try and. At some point in 98, the government appeared to take the position the petition had to be filed before discovery. So we're really looking at the time period before that, and I can't tell from what I've looked at so far, and it sounds like it's not crystal clear perhaps to anyone, how it was that the court came to adopt or to require the parties to come up with some kind of stipulated discovery plan. And that may be what we're all staring at. Why was it that a year went by on a discovery effort when ultimately the decision was made a petition needed to be filed before the discovery? Where did the year go? And why did it go by? That's a good question. What happened, there's an extensive minute order that was entered by the court on December 29th of 1997, and in that, what this minute order addresses is the fact that Mr. Bonifant was trying to intervene in the Roopley and Baker cases. The court ultimately denied the request for intervention because nothing had been filed. This is December of 97 after the conflict issue had been resolved. The court indicates at page 79, I think this is actually in Mr. Bonifant's excerpt of record, it's docket number 3100, it should be noted, however, that none of these defendants has yet filed a 2255 motion referring to Roopley, Baker, and Baker. This court granted these three defendants a period of six months in which to conduct discovery. This was after the conflict issue on May 30th of 1997, or at that same time. Let me short-circuit this a little bit. Maybe I shouldn't be doing this, but let me ask you a question. Clearly, they didn't file within the one-year statute. That's easy, right? That's correct. That means it follows as the night, the day, they're done unless they can spell out equitable tolling, correct? Correct. Equitable tolling, we've said, is an intensely factually driven question. True? Correct. The district court never went there, did it? It never made that decision. It just said, because it was following our mistake in the Calderon en banc, it just said, well, ADIPA doesn't even apply to this case. Correct. That's what it said. So the district court has never gone through this exploration that we're trying to go through with you from the bench here. So it has never made a factual determination that from its standpoint, as a matter of fact, equitable tolling should apply. Correct? Correct. What should we do about that? Should we resolve that factual issue on appeal, in your opinion? Normally, I would suggest that there be a remand for the court to consider this issue. But I don't believe that. And Waylon Hunt, if I'm not mistaken. I'm sorry? We did that in a case. Waylon Hunt. I don't believe we need to do that in this case, and this is the reason why. There was another minute order entered by the court on September 11th of 1998, and this is. . . Now, which excerpts of record are you referring to? This one is in. . . This is actually in both excerpts of record. It's in the Roopley excerpt of record at pages 34 to 37, and in the Bonnetfront excerpts of record at pages 92 to 95. This is a minute order that the district court entered on September 11th. . . September 11th of 1998. Again, the court relates the permission of a discovery period. And it indicates that that previously granted motion had been an error. Right. And it therefore ordered that the defendants, Roopley, Baker, and Baker, then have 30 days from that date in which to file their 2255 motions. Now, that was in. . . on September 11th, 1998. In fact, they didn't file their motions until Mr. Roopley filed his motion on November 6th of 1998, and Mr. Baker filed his motion, or the Baker's. . . Well, now all that gets to is they didn't comply with the court order. That may not. . . If the period was told through, let's just say, September of this minute order, September 11th, that one year would have began, and the district court ordered them to file within 30 days, that's a violation of a court order. We're not dealing with the statute of limitations. No, we're dealing with equitable tolling. And as this court has indicated, it's a factual, intensive inquiry that hasn't been ruled upon by the district court. I have a few more minutes, and if the Court would like me to, I can address the merits of the case. Well, I don't think we have in the related appeal. I think Mr. Bonifaz, he filed his petition timely. Yes, he did. He filed it on the last day, in fact, on April 23rd of 1997. He wasn't bothered with a lot of legal stuff, so he just filed it according to the Congress then. Yes. All right. Well, go ahead, and you have a few minutes in this case. But when we get to the other case, I would not. . . I don't want duplicate, you know, repetitive arguments. No, no. I'd like to thank again Mr. Gibson for providing me with this Court's order that I believe was issued July 6th, which had some specific questions to ask with respect to Mr. Bonifaz's case. I didn't receive it, but I did get it this morning from Mr. Gibson, and I'm prepared to respond to those questions and don't intend to go over the same ground again. All right. Admittedly, this was an odd occurrence, a court security officer marrying a juror within a matter of, I believe it was a couple of weeks or so after the jury verdict. Petitioners can't seem to figure out, though, given that occurrence, what kind of case it represents. They indicate in their brief that it's an amalgam of different problems. They say it's jury tampering. They say it's extraneous information introduced to the jury, and they say it's ex parte contacts. Possibly it could be any of those, any or all of those. Well, not really. I suppose it's not. Well, the district court conducted a very extensive evidentiary hearing to determine if any one of those circumstances might exist. That's correct. Correct. And what the district court finally determined was that there was no evidence whatsoever of any jury tampering. There was no evidence whatsoever of any extraneous material introduced into the jury room, that there was no evidence whatsoever of any ex parte contact regarding the sum and substance of the case. There was admittedly a romantic relationship. The court indicated that there's and the court held a week's long session of hearings. The court allowed discovery before the hearing, allowed depositions, asked the government to turn over various items of discovery, and then held this week-long hearing wherein all of these individuals that were involved were called to testify. At the conclusion of which, the court indicated that there's no basis to conclude the romantic relationship would affect the juror's impartiality or ability to judge the case fairly. As we argued, as was argued in the very fine arguments presented yesterday, this is a case based on inference. We infer from the circumstantial evidence that there was a romantic relationship between the CSO and the juror during trial. However, reason and common sense do not lead us to further infer from that evidence in this case that there was jury tampering, extrinsic evidence introduced to the jury, or actual prejudice to the defendants as a result of the ex parte contact between the juror and the CSO. There's nothing here to raise any inference, prejudice beyond the relationship itself, and that's simply not enough to raise such an inference. There is no evidence on which to base an inference that this juror was improperly influenced or that her impartiality could reasonably be questioned. The evidence fails to show the defendants did not receive a fair trial in constitutional due process. The case to me that seems most on point is the Seahawk Seafoods case, which indicates that ex parte contacts are less likely to do any harm to the deliberative process than extrinsic information or coercion. And it goes on to note that if this court were to reverse a conviction in a case of this magnitude for this type of contact between a core security officer and a juror, that in a long, highly high-publicity case, a new trial on account of ex parte contacts is likely to be no more pure than the first trial. In my last few remaining moments, let me just mention the discovery issue. The court in its December issue denying the Rupley and Baker 2255 petitions indicated with respect to discovery that these motions do not state a factual basis for 2255 release. Relief discovery is governed by Rule 6, and the question then becomes whether defendants have shown good cause for the discovery they seek. We find that good cause has not been shown. Neither the 2255 motion nor the opposition to the motion to dismiss indicate what evidence favorable to defendants might be obtained through discovery. And the court goes on to say that although disclaimed as such by the petitioners, the showing by defendants appears to be a fishing expedition and is insufficient to warrant discovery. Certainly, this Court could remand on the issue of whether or not there's equitable tolling, but I submit to the Court that on the merits of this case, although admittedly an odd occurrence, the petitioners have not shown that they're entitled to relief under the juror misconduct issue, nor have they shown that the judge erred with respect to his discovery orders. And we'd ask that the petition's denial be affirmed by this Court. Okay. Good morning. My name is Pete Gibson, and as Mr. Flanagan has told the Court, I've been representing Richard Rupley, and I think what is the longest CJA appointment in the United States history since October 1986. I'm going to talk specifically about the questions that the Court has raised on tolling. And one point I don't believe had been addressed, and that is whether there is a provision for actual as well as equitable tolling. And I believe that we've cited to language in the original Calderon-Beeler case that acknowledges that this statute of limitations as provided for in the statute is not a straight jurisdictional bar, but is indeed one that is dealt with on a time basis and is subject to both application for actual tolling as well as equitable tolling. And our position has been that, indeed, at the very least, this case was actually told by the district judge in a number of manners, as evidenced by the proceedings in the case and his articulated rulings in the decision. Where does the statute give the district court judge to actually toll the statute, to say the statute is tolled? I don't think that there's a requirement that the statute state that it is subject to an order of tolling by a court. I think instead that the statutes that are typically construed as to prohibit tolling have that language that bars any extension of time by stipulation or court order. And there is no precedent of which I'm aware that interprets the statute of limitations period of this particular statute in such a fashion as to constitute an absolute bar for extension by stipulation or by court order. But let's assume for a moment that this is to be remanded. And I think this district judge is uniquely situated to be able to examine the equities of all parties and the court and, indeed, to articulate for the record its reasonings and process in handling this case and knowing Judge Reed as a meticulous jurist, I don't think he would have any hesitation in providing that information for this court on further review. And I think it's only fair to that district judge, who is always a jurist, who is the sense of justice and fair play for the parties at the foremost of his mind, to have the opportunity to explain how and why this case was processed through his direction. This was not something that popped up at the last minute by counsel filing letters or pleadings. It was done in conjunction over a period of many years with this noted jurist. And another aspect of the equitable tolling that I think is very important, because it does bear on the ultimate measure of whether this case is going to get tossed on a statute of limitations, issue when we know the significance of the subject matter that we're dealing with. And that is whether the government should be barred from asserting its defense of statute of limitations in this matter on the equitable theories of waiver, latches, and estoppel. And we've identified the course of conduct that the government engaged in to discovery proceedings in filing a motion in 1997 to compel or I'm sorry, 1998, to compel compliance with Rule 6, the discovery proceedings authorized by the habeas statute, not to toss it on a statute of limitations basis or to inform the court that there might be a statute of limitations issue. You know, it actually looks, at least perched here, as if nobody read or understood the Kelly case when it came out in 1997. It is amazing to me that the judge and the lawyers would have read that case, which said you've got to file your habeas corpus, and then said, oh, well, no problem. So what we're really talking about probably is just a mistake that everybody made, and the question is whether you can get tolling for that. Isn't that true? Well, I think, Your Honor. Bonifant didn't make the mistake, because he doesn't read cases, so he just filed. And there's, I'm sure, a circumstance associated with that that Mr. Picker will talk about. But I think we argued the interpretation of Kelly as substantiating the commencement of a case issue, and I understand the court disagrees with our argument and Judge Reed's application of Kelly. But we don't know. I mean, yes, the court does, because the court said you've got to file, and the Supreme Court says that's right, right? I believe that, well, the Supreme Court's decision we cited was a 2254 case, and I think we tried to distinguish it on its merits in our brief, but generally, yes. Distinguish it? Well, I think the protections that were discussed by the Supreme Court in the subsections of the 2254 amendments that pertain specifically to those convicted of capital murder and their ability to either file petitions with the assistance of counsel or not were core to the requirement that the actual application itself be filed before the case is deemed to have been commenced. And I know that's splitting hairs, but that's what we're doing here, I think, at least in good faith in our best effort to preserve this particular case. But getting back to the remand, I think the remand should specify that the district court examine first whether it actually told the applicable statute of limitations when that tolling began and describe the procedure associated with the tolling. Number two, if, well, not if. Number two, to examine whether there was equitable tolling under the prevailing system of law and for the judge to make findings of fact with respect to that equitable tolling. And third, as to whether the government should be barred from asserting this defense at this particular point in time by virtue of its inequitable conduct during the course of the proceedings. I'm coming down on about two and a half minutes, and I wanted to ask you a question. You weren't involved in the conflict situation, were you? I was. You were? Let's see, the net conflict was resolved? The district court's order, Your Honor, is dated May 30, 1996. Okay. And my question to your co-counsel was what prevented you, after that issue was resolved, from filing your petition almost a year and a half later? Well, I think the easiest answer is in two parts. First, that we took the position, as the May 30 order specifically states, that a discovery period of six months is now open with respect to the filing of a 2255 motion and shall remain open until November 30, 1997. And that period was subsequently extended and then terminated. But that's what you rely on. Well, the reason for the court didn't say don't file it. That's correct. And the issue of the statute of limitations wasn't as compelling to us. And having been there and done that, I can share with the Court, it was trying to gather the sufficient evidence so that we wouldn't be doing a shotgun writ with 13 or 18 claims that would only precipitate negative reaction from the government and potential negative reaction from the Court. Well, you can always amend that, your motion. Well, but we represented to the Court initially before the statute of limitations issue even arose and as before the effective date of the amendment. What's the best way to handle this, your Honor, when we've got 30,000 pages of transcript, literally hundreds of thousands of pages of exhibits and reports and documents, and we've got 250-some witnesses that perhaps pertain to our examination? How do we want to go about this? We suggest to you, your Honor, that you grant us a discovery period that you can supervise so that we aren't meandering around aimlessly and be focused, develop the evidence that needs to be developed pre-filing so that we don't have this unnecessary step of a Court saying, okay, you filed your petition, now justify your allegations with office of proof and all the rest of this stuff, and we come back and say, we need discovery. You were trial counsel, correct? Yes, I was. You had some idea of what issues you wanted to raise. I certainly had some idea, your Honor, but I didn't want to do it capriciously. I wanted to have the opportunity to be sure that what we were going to articulate was substantiated by evidence that we could point to then and there in support of our particular provision. And I see the lights blinking. If I could just have 30 seconds. There's another issue that's really pregnant here, and that is as a condition of our representation in this 2255 proceedings, our clients waived any claim for ineffective assistance of counsel. I haven't heard the government waive that waiver as a condition of proceeding with their argument. If this Court finds that Mr. Flanagan and I booted this by not properly and timely filing, given all the facts and circumstances in this case, a petition within the time period described were clearly ineffective, and these clients ought to have then the opportunity to proceed to resurrect what is clearly a substantive issue, and they ought to be released from any waiver of proceeding against us as ineffective counsel. Another issue. Thank you very much. This matter will stand submitted. The next case on the calendar is Bonafant v. United States. Is this Mr. Picker? Yes.
judges: Fernandez, Paez, Clifton